IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TARYN L. MICHELETTO,<br><br>     Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of the Social Security<br>Administration,<br><br>     Defendant. | CV 17-13-BLG-TJC<br><br>**ORDER** |

On January 30, 2017, Plaintiff Taryn L. Micheletto ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of Plaintiff's claim for disability insurance benefits ("DIB") under Titles II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433.  (Doc. 1.)  The Commissioner filed an Answer and the Administrative Record ("A.R.") on April 10, 2017.  (Docs. 4, 5.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of disability benefits.  (Doc. 14.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 19, 20.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds the case should be **REMANDED** for further administrative proceedings

I.    **PROCEDURAL BACKGROUND**

Plaintiff filed an application for DIB benefits in July 2013.  (A.R. 142-145.) Plaintiff alleges she has been unable to work since November 26, 2012.[1]  (A.R. 158.)  The Social Security Administration denied Plaintiff's application initially on October 25, 2013, and upon reconsideration on April 9, 2014.  (A.R. 74-83, 84-93.) On May 29, 2014, Plaintiff filed a written request for a hearing.  (A.R. 100-101.) Administrative Law Judge Michele M. Kelley (the "ALJ") held a hearing on April 16, 2015.  (A.R. 30-73.)  On June 5, 2015, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 11-29.)  Plaintiff requested review of the decision on August 4, 2015.  (A.R. 7-10.)  The ALJ's decision became final on December 1, 2016, when the Appeals Council denied Plaintiff's request for review. (A.R. 1-6.)  Thereafter, Plaintiff filed the instant action.

*/ / /*

_____

[1] Plaintiff initially alleged an onset date of April 19, 2009.  (Doc. 1 at ¶ 3.) Plaintiff amended the alleged onset date to November 26, 2012, in a letter from counsel dated April 15, 2015.  (A.R. 158.)  There appears to be no dispute between the parties that November 26, 2012, is the operative alleged onset date.

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457.  In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)).  The Court must uphold the

denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B.    Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C.

§§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III. FACTUAL BACKGROUND

### A. The Hearing

A hearing was held before the ALJ on April 16, 2015, in Billings, Montana, and the following testimony was provided.

#### 1. Plaintiff's Testimony

Plaintiff testified that she lives with her husband and two children (ages 7 and 5) in a mobile home in Miles City, Montana. (A.R. 39.) She stopped working when she gave birth to her youngest child; at that time, she intended to return to work. (A.R. 39.) She testified that her "stomach and arms both started [] flaring up" around the time she would have gone back to work. (A.R. 39.)

The pain in Plaintiff's arms began to bother her in the in spring of 2012. (A.R. 42.)  When asked what aggravates her arm pain, Plaintiff replied, "[w]hen I walk, if I swing my arms, folding clothes, lifting anything, wind outside, [] just [] a breeze, if it touches me.  If someone comes up and puts their arm [] on my shoulder, it can trigger it."  (A.R. 42.)  Plaintiff stopped exercising on a treadmill because of her arm pain.  (A.R. 42.)

Plaintiff was asked about her stomach issues.  (A.R. 43.)  She explained that she bases "anything I eat on what it's going to taste like coming back up" due to the likelihood of vomiting.  (A.R. 43.)  She testified that she eats small portions, and tries to eat only once a day, supplemented by protein shakes.  (A.R. 43.)  She has tried several different diets with no improvement.  (A.R. 44.)  She gets severe stomach pain, cramping, and bloating, and suffers from uncontrollable, foul-smelling and -tasting belches.  (A.R. 43.)  Every 2-4 days, she goes through a period of vomiting and diarrhea, sometimes vomiting food from days previous. (A.R. 43.)  She has been told that her "vagus nerve is paralyzed, so that the stomach isn't…digesting the food as it should, so it's not going through the system."  (A.R. 44.)  She often throws up at night, which results in her being tired the next day.  (A.R. 44.)

Plaintiff stated that she goes through periods when her stomach issues are worse. She described the month prior to the hearing as a "bad month," because she got an infection in her GI tract, which was treated with antibiotics. (A.R. 45-46.) She often misses appointments due to stomach issues. (A.R. 46.) She described a "good month" as one when she is just throwing up every 2-3 days without additional complications. (A.R. 45.)

Plaintiff testified that she has suffered from fatigue since her stomach issues began. (A.R. 46.) She said she sleeps more than she is awake 1-2 days out of 10. (A.R. 46.) Any degree of physical activity is difficult due to Plaintiff's fatigue, and chores such as laundry, sweeping, and vacuuming also trigger her arm pain. (A.R. 46-47.) Nevertheless, she still tries to do dishes and cooking, which she can do for an hour before needing a break. (A.R. 47-48.)

Plaintiff was asked about her headaches. (A.R. 48.) She testified that when her "arms flare up," she gets headaches that start in her neck and result in pounding and throbbing in her head, requiring her to lay down. (A.R. 48.) She also suffers from "food allergy headaches," which are triggered by foods such as onions, garlic, and leeks. (A.R. 48.) Even the smell of those foods and others (such as Doritos chips) can trigger Plaintiff's headaches, along with swelling and hives. (A.R. 48-49.) This condition prevents her from visiting restaurants and the grocery store

produce section, and she does not visit the grocery store at all when foods are likely to be cooking in the deli.  (A.R. 49.)  When asked, "[d]o you go by yourself?," Plaintiff testified, "never," although it is unclear whether she meant just with respect to the grocery store.  (A.R. 49.)

Plaintiff testified that she always carries a bag in case she throws up, and she carries an EpiPen and Benadryl "in case of contact with an onion product."  (A.R. 49-50.)  She cannot carry her purse on her shoulder because weight on her shoulders triggers her arm pain.  (A.R. 50.)  Her arm pain is also triggered by fine motor movements such as writing and typing.  (A.R. 51.)

She testified that one of her providers gave her a weight lifting limit of 10 pounds after testing her arms and hands, and taking x-rays.  (A.R. 52.)  She drives but not far, and her hands become numb and painful from having them on the steering wheel.  (A.R. 52.)  She drives her children to school on average once per week, and picks them up from school on average twice per week.  (A.R. 53.)

On a good day, Plaintiff can do the dishes, get her children ready for school, and drop them off.  Once back at home, Plaintiff would pick up the house, and she mentioned a project she was working on to switch out the sizes of her children's clothes.  She would then rest for an hour before picking them up from school.  (A.R. 53-54.)  In warm weather, she would then sit in a lawn chair while the

children play outside.  She cannot be outside in cold weather because she is "allergic to the cold."  (A.R. 54.)  In cold weather, she might make them hot chocolate when they come inside or sit at a table with them while they paint.  (A.R. 54-55.)  Even on a good day, Plaintiff no longer can walk to the park or push the children on a merry-go-round.  (A.R. 55.)

Plaintiff was asked about her reaction to cold.  She answered that "any cold" (listing air conditioning, fan, and ice water) will cause hives and itching.  (A.R. 55-56.)  Cold also triggers pain in her arms, and her sensitivity to cold began when her arm pain began.  (A.R. 56.)

On a bad day, Plaintiff testified that she sleeps a lot.  She stated that she will say goodbye to her children and then lay back down, sometimes until 4:00 or 5:00 in the evening.  (A.R. 56.)  She gets dehydrated easily on bad days, and her doctor has discussed installing a port so she can give herself fluids.  (A.R. 56.)

Plaintiff's husband is out of town for work for 15 days and then home for 6.  (A.R. 40.)  Plaintiff's mother often stays with Plaintiff when Plaintiff's husband is out of town.  (A.R. 40.)  Plaintiff also receives assistance caring for her children from neighbors, the parents of other children, and two college students.  (A.R. 40.)

Plaintiff testified she was trying to get pregnant at least as late as the summer of 2014, but she testified that she was no longer attempting to do so as of the date of the hearing due to her health. (A.R. 41.)

Upon questioning by the ALJ, Plaintiff stated that her stomach issues have been diagnosed as gastroparesis. (A.R. 57.) She has had EMG studies of her arms that came back normal. (A.R. 57.) Plaintiff takes Farxiga to stabilize her blood sugar; her dosage was increased in the month prior to the hearing. (A.R. 58.) Plaintiff's weight fluctuates by 10 or so pounds; she has been told her body is in "starvation mode, so it stores anything that it can." (A.R. 58-59.)

## 2. Vocational Expert's Testimony

Delane Hall, a Vocational Expert (the "VE"), also testified before the ALJ. (A.R. 60-72.) The VE noted that Plaintiff has performed the following jobs: (1) pharmacy technician (specific vocational preparation ("SVP") of 3 and physical demand light, though medium per Plaintiff) from October 2004 to April 2009; (2) psychiatric aide (SVP of 4 and physical demand medium, though light per Plaintiff) from April 2003 to August 2004; (3) cashier/checker (SVP of 3 and physical demand light) from March 2002 to May 2003; (4) certified nurse's aide (SVP of 4 and physical demand medium, though heavy per Plaintiff) from August 1996 to March 2002); (5) cleaner/housekeeper (SVP of 2 and physical demand

light) from 1996 to 2000; (6) babysitter (SVP of 3 and physical demand medium) from May 2010 to July 2010; and (7) part-time as a photographer (SVP of 7 and physical demand light) from October 2010 to February 2013.  (A.R. 61-62.) Plaintiff testified that the heaviest weight she lifted at various jobs was around 50 pounds as a housekeeper, 25 pounds as a babysitter, and 20 pounds as a photographer.  (A.R. 62-63.)

Next, the ALJ asked the VE three hypothetical questions.  First, the ALJ asked the VE to assume an individual with the following characteristics: the same past jobs as Plaintiff; limited to lifting and carrying, pushing and pulling 10 pounds frequently and 20 pounds occasionally; walking and standing six hours in an eight-hour workday; sitting six hours in an eight-hour workday; able to change positions during normal work breaks; can frequently climb ramps and stairs, balance, kneel, crouch, and crawl; cannot reach over shoulder level with either upper extremity; can frequently climb ramps and stairs, balance, kneel, crouch, and crawl; can occasionally climb ladders, ropes, and scaffolds, stoop, and push and pull with upper extremities; should avoid concentrated exposure to noise levels greater than three out of five on a scale set forth in the Dictionary of Occupational Titles ("DOT"); and should avoid job hazards, including unprotected heights and dangerous machinery.  (A.R. 64.)  The VE said the individual would be able to

perform Plaintiff's past jobs of psychiatric aide according to the Plaintiff, but not as described by the DOT; cashier/checker; and photographer.[2] (A.R. 64-65.) The VE said the individual could also perform the jobs of survey worker/interviewer, office helper, and call-out operator. (A.R. 65-66.)

Second, the ALJ asked the VE to assume the same person, but with the additional limitations that the individual cannot tolerate concentrated exposure to temperature extremes, wetness, or humidity. (A.R. 66-67.) The VE said the individual would be able to perform all of the jobs identified with respect to the first hypothetical. (A.R. 67-69.)

Third, the ALJ asked the VE to assume an individual with the same past work history as Plaintiff, who is of a similar age, and has a similar educational background, but who would be off-task consistently 20 percent of an eight-hour workday and 40-hour week. (A.R. 69.) The VE said there were no jobs in the national economy available for such an individual. (A.R. 69.)

The VE provided the following additional testimony upon questioning by Plaintiff's counsel. First, the VE conceded that it "would be next to impossible" for an employer to regulate the types of foods other employees are bringing for

_____

[2] The ALJ initially stated that Plaintiff also could perform her past job of pharmacy technician, but he amended that answer during discussion of hypothetical #2 due to lifting requirements. (A.R. 67-68.)

lunch.  (A.R. 70.)  Next, Plaintiff's counsel asked if the available jobs would change for someone who could only use her hands for fine motor tasks consistently for a few minutes; the ALJ said that would eliminate pharmacy technician, cashier/checker, and office helper.  (A.R. 71.)  Next, Plaintiff's counsel asked if the available jobs would change for someone who could only use her upper extremities for an hour total in the day; the ALJ said that would eliminate all of the positions. (A.R. 71.)  Next, Plaintiff's counsel asked if the available jobs would change for someone who would be absent two days per week; the ALJ said that would depend on the employer and Plaintiff's overall job performance, but typically one absence per month is the standard that would be tolerated.  (A.R. 71-72.)  Finally, Plaintiff's counsel asked if the available jobs would change for someone who generally was a good worker four days per week but who, one day per week, would be spending a substantial amount of time in the restroom; the ALJ said that would depend on whether the person was completing her assigned tasks.  (A.R. 71-72.)

### B.    Medical Evidence

The A.R. also includes the following pertinent medical records.  Additional records may be discussed below as appropriate.

/ / /

### 1. Treating Physician Evidence

#### a. J. Randall Rauh, MD

Dr. Rauh is a primary care physician who treated Plaintiff for a number of years, both prior to and after the alleged onset date. (A.R. 350.) Dr. Rauh completed two surveys pertinent to the instant case.

First, he completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" on September 16, 2014. (A.R. 342-347.) The express purpose of the survey was "[t]o determine this individual's ability to do **work-related activities on a regular and continuous basis**…" (A.R. 342 (emphasis in original).) Dr. Rauh presented the following exertional opinions: Plaintiff can lift and carry up to 10 pounds occasionally, and never 11 pounds or more (A.R. 342); can sit, stand, and walk for 2 hours at a time without interruption and for 8 hours total in an 8-hour day; can never reach, feel, push, or pull, but can handle and finger continuously; can never crawl or climb ladders or scaffolds; can occasionally balance; can frequently stoop, kneel, crouch, and climb stairs and ramps; should never be exposed to unprotected heights, moving mechanical parts, extreme cold, extreme heat, or vibrations; should only occasionally operate a motor vehicle; can continuously tolerate humidity and wetness, and dust, odors, fumes, and pulmonary irritants; and is limited to moderate noise, such as that found in an

office.  (A.R. 342-346.)  Additionally, Dr. Rauh did not identify any limitations with respect to various personal tasks, including, *inter alia*, "sort[ing], handl[ing], or us[ing] paper/files."  (A.R. 347.)

Next, Dr. Rauh completed a "Physical Impairment Questionnaire" on February 28, 2015.  (A.R. 350-352.)  He listed her diagnoses as diabetes, reflex sympathetic dystrophy, and gastroparesis.  (A.R. 350.)  Her symptoms included "pain in arms with activity [and] at rest," "fatigue," and "reflex vomiting."  (A.R. 350.)  Dr. Rauh noted that Plaintiff's "pain is managed with opiates which produce drowsiness," and that "her vomiting is reflex and non-responsive to meds."  (A.R. 350.)  Dr. Rauh opined that Plaintiff "cannot use either of her upper extremities including hands without pain, loss of grip strength, and limited range of motion." (A.R. 351.)  He indicated that Plaintiff will need to take unscheduled breaks during the workday, and he "doubt[s] [Plaintiff] will ever work 8 hour days."  (A.R. 351.) Dr. Rauh indicated that Plaintiff would be likely to miss 2-3 days per month, and he opined that she "is not going to be able to have sustained work requiring use of upper extremities."  (A.R. 352.)  Dr. Rauh presented the following exertional opinions: Plaintiff can stand for less than 2 hours in an 8-hour workday; can sit about 2 hours in an 8-hour workday; can lift and carry less than 10 pounds

occasionally and rarely more than 10 pounds; can never twist or climb ladders; and can rarely stoop, crouch, and climb stairs.

### b.     Kathleen C. Davis, MD

Dr. Davis treated Plaintiff for allergies on June 18, 2014.  (A.R. 295-296.) Pertinent to the instant case is that Dr. Davis performed skin tests that revealed, *inter alia*, "borderline reactions to tomato, mushroom, wheat and onion."  (A.R. 295.)  Dr. Davis diagnosed Plaintiff with food sensitivities, noting "[s]ome of these I believe are migrainous, such as the onion family, although she did have a borderline reaction to onion.  The rest of those tests were negative, although she does still seem to have a significant sensitivity as far as triggering migraines."  (A.R. 295.)  Dr. Davis prescribed Zyrtec and advised Plaintiff to avoid the foods that presented reactive results.

### 2.     Treating Other Source Evidence

### a.     Kara Erickson, PA-C

Erickson is a certified physician assistant.  Pertinent to the instant case is her treatment of Plaintiff on November 26, 2012, which is the alleged onset date. (A.R. 240-241.)  Erickson's treatment notes indicate that Plaintiff "notes that she has figured out what brings on her severe headaches.  She has figured it out to food allergies of onions, garlic or leeks bring on the symptoms."  (A.R. 240.)  Erickson

noted that Relpax "continues to help when [Plaintiff] has extreme headaches, migraines." (A.R. 240.) Erickson prescribed an EpiPen in case of allergic reaction. (A.R. 240-241.)

### 3.    Non-Examining Physician Evidence

#### a.    William Fernandez, MD

Dr. Fernandez reviewed Plaintiff's medical records, but did not examine her, and did not testify at the hearing. He issued an opinion on September 18, 2013. (A.R. 75-83.) Dr. Fernandez opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. (A.R. 91.) Dr. Fernandez found Plaintiff can stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour work day. (A.R. 79.) Dr. Fernandez also stated Plaintiff can perform unlimited pushing/pulling, except as limited for lift and/or carry; frequently climb ramps/stairs, balance, kneel, crouch, and crawl; and occasionally climb ladders/ropes/scaffolds and stoop. (A.R. 79-80.) He noted that Plaintiff should avoid concentrated exposure to noise and hazards. (A.R. 80.) He ultimately concluded that Plaintiff is not disabled. (A.R. 82.)

#### b.    David Jordan, M.D.

Dr. Jordan reviewed Plaintiff's records at the reconsideration phase, and affirmed the findings of Dr. Fernandez. (A.R. 85-93.) There are no significant

departures from the earlier reviews.

## C.     The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim.  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity from November 26, 2012, through her date last insured of September 30, 2014.  (A.R. 16.)  Second, the ALJ found that Plaintiff had the following severe impairments through the date last insured: "reflex sympathetic dystrophy, thoracic outlet syndrome, gastroparesis, esophagitis, and gastroesophageal reflux disease."  (A.R. 16)  The ALJ also found that Plaintiff had the following non-severe impairments through the date last insured: "diabetes mellitus, obesity, metabolic syndrome, and allergies."  (A.R. 16-18.)  Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equal any one of the impairments in the Listing of Impairments.  (A.R. 18-20.)  Fourth, the ALJ stated Plaintiff has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as follows: she can lift and carry 20 pounds occasionally and 10 pounds frequently, push and pull 20 pounds occasionally and 10 pounds frequently, stand and walk for 6 hours per day, and sit for 6 hours per day; can never reach over shoulder height with both upper extremities; can frequently climb ramps and stairs, balance, kneel, crouch, and crawl; can occasionally climb ladders, ropes, and scaffolds, and stoop; and should avoid concentrated exposure to moderate noise (3/5),

hazards, unprotected heights, dangerous machinery, and extremes of temperature, wetness, and humidity.

(A.R. 20-23.)

The ALJ next found that Plaintiff was able to perform the past relevant work of psychiatric aide and cashier/checker, in addition to being able to perform the requirements of representative occupations such as survey worker/interviewer, office helper, document preparer, and call-out operator. (A.R. 23-25.) Thus, the ALJ found that Plaintiff is not disabled. (A.R. 25.)

## IV. DISCUSSION

Plaintiff argues that the ALJ erred by failing to provide specific germane reasons for discounting her credibility; erroneously discounting the opinions of treating physicians and other source medical providers; erroneously ignoring diabetes mellitus, obesity, metabolic syndrome, and allergies as severe impairments; and failing to include all impairments in the hypothetical to the vocational expert. The Commissioner argues the ALJ reasonably found that Plaintiff's activities were inconsistent with her alleged limitations, and that objective medical evidence contradicted Plaintiff's statements concerning her symptoms and limitations. The Commissioner further argues the ALJ properly determined Plaintiff's severe impairments.

/ / /

## A.    The ALJ's Credibility Determination

Plaintiff argues that the ALJ's credibility determination was erroneous because the ALJ made only a general credibility finding without providing clear and convincing reasons for rejecting her testimony.  Plaintiff further argues that her testimony was fully supported by the objective medical evidence.  The Commissioner counters that the ALJ properly evaluated Plaintiff's credibility.

The credibility of a claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so.  *Id.*

"In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"  *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the

claimant's complaints." *Reddick*, 157 F.3d at 722 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). The clear and convincing standard "is not an easy requirement to meet: '[It] is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

Here, the first step of the credibility analysis is not at issue. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, and there is no argument that Plaintiff is malingering. Therefore, the ALJ was required to cite specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of her impairments. The Court finds the ALJ failed to so.

First, the Court notes that the ALJ did not discuss Plaintiff's hearing testimony at all in her decision. Though the ALJ nominally discussed Plaintiff's allegations and complaints, those discussions were all in the context of Plaintiff's medical records and were describing statements Plaintiff made to her treating providers. (*See e.g.* A.R. 18-20.) Nowhere in her decision does the ALJ identify any statements Plaintiff made on the record at her hearing and then discuss why those statements should not be credited as true. Rather, she made the general finding that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons

explained in this decision." (A.R. 22.) That type of general finding is not sufficient, and justifies remand on its own. *Reddick*, 157 F.3d at 722.

Putting aside that threshold deficiency, the ALJ still erred in determining that Plaintiff's testimony was not credible. According to the Commissioner, "the ALJ gave two valid reasons, supported by substantial evidence, to support her findings that Plaintiff's symptoms were not as significant as alleged." (Doc. 19 at 19.)

First, the Commissioner argues that "the ALJ determined that the objective medical evidence did not support Plaintiff's allegations." (*Id*.) While the ALJ did provide a fairly thorough discussion of the objective medical evidence, that is not sufficient to discredit Plaintiff's hearing testimony. This was the precise question the Ninth Circuit answered in *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015.) In *Brown-Hunter*, 806 F.3d at 489, the Ninth Circuit held an ALJ fell short of providing specific, clear, and convincing reasons for rejecting a claimant's testimony by merely reciting the medical evidence in support of his RFC finding. The Court explained that summarizing the medical record "is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Id.* at 494 (emphasis in original). The Ninth Circuit also emphasized that the ALJ must identify specifically *which* of the claimant's

statements she found not credible and *which* evidence contradicted that testimony. *Id.* at 493-494.

Without the required specificity, the Court cannot meaningfully review the ALJ's decision to determine whether the ALJ arbitrarily discredited Plaintiff's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."); *Brown-Hunter*, 806 F.3d at 492 ("[A]lthough we will not fault the agency merely for explaining its decision with 'less than ideal clarity,' . . . we still demand that the agency set forth the reasoning behind its decision in a way that allows for meaningful review.") (citation omitted).

Because the ALJ failed to point to the specific parts of Plaintiff's testimony she found not credible, and failed to link that testimony to particular parts of the record, the ALJ erred. *Brown-Hunter*, 806 F.3d at 494. As such, the Court finds that the ALJ's credibility finding is not supported by specific, clear, and convincing reasons.

The second basis the Commissioner highlights for the ALJ's decision to discredit Plaintiff's testimony is that "the ALJ found Plaintiff's daily activities demonstrated she was more capable than alleged." (Doc. 19 at 22.) While the ALJ

did at least mention Plaintiff's daily activities, the Court finds that this basis also is lacking. First, the primary context of the ALJ's discussion of Plaintiff's daily activities was not in a discussion of her testimony but rather a Disability Report Plaintiff completed on July 26, 2013, nearly two years prior to the date of the hearing. (A.R. 22.) While that Disability Report may constitute evidence the ALJ can use to discredit Plaintiff's testimony, the ALJ did not identify which portions of Plaintiff's testimony she believed to have been contradicted by the Disability Report, thereby erring in the same manner discussed above. *Brown-Hunter*, 806 F.3d at 494.

Next, even assuming the ALJ had discussed Plaintiff's daily activities within the context of Plaintiff's actual testimony, merely listing the activities described in this case (the abilities "to care for grooming and hygiene, fix small meals, occasionally do the laundry, load and unload the dishwasher, shop for groceries, and drive a car," and "pay bills and handle checking and savings accounts" (A.R. 22)) does not constitute a clear and convincing basis to discredit Plaintiff's testimony. While the level of a Plaintiff's activities may certainly be considered in assessing credibility, the Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly

incapacitated' in order to be disabled." *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) and *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  The ALJ does not link any of the identified activities to any facet of any job the VE proposed that Plaintiff could perform, nor did the ALJ explain why the ability to participate in these activities was inconsistent with Plaintiff's testimony.  Accordingly, it is impossible for the Court to assess the ALJ's apparent determination that Plaintiff's daily activities are relevant to her testimony that she cannot work.

The Court finds further that these errors are not harmless.  An ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  Here, the VE provided answers indicating that if Plaintiff's testimony were fully credited (e.g., with respect to her food allergies, upper extremity limitations, and likelihood of absenteeism), some or all of the proposed jobs would be eliminated.  (A.R. 69-72.)  Accordingly, a proper determination of Plaintiff's credibility may affect the outcome of Plaintiff's disability claim.

//

//

## B. Treating Physician and Other Medical Source Evidence

Plaintiff argues the ALJ failed to give proper weight to Dr. Rauh's opinions. The Commissioner responds that the ALJ gave the opinions proper weight. The Court finds that the ALJ properly considered Dr. Rauh's opinions.

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830. The Commissioner applies a hierarchy of deference to these three types of opinions. The opinion of a treating doctor is generally entitled to the greatest weight. *Id.* ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830.

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

"However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id*. *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.").

If the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security Ruling 96-2p). Nevertheless, in that event the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to accord the opinion. *See* Social Security Ruling 96-2p (stating that a finding that a treating physician's opinion is not well supported or inconsistent with other substantial evidence in the record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."). The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment

relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the ALJ's attention that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6).

Opinions of treating physicians may only be rejected under certain criteria. *Lester,* 81 F.3d at 830.  To discount an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons."  *Id.*  To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)*; Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  "The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors' are correct."  *Reddick*, 157 F.3d at 725.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician."  *Lester*, 81 F.3d at 831 (emphasis in original).  However, "the findings of a nontreating,

nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

Dr. Rauh treated Plaintiff for a number of years, and his treatment records form a substantial portion of the medical evidence in this case. (*See e.g.* A.R. 273-276, 281-291, 342-367.) As discussed above, he also completed two surveys expressly designed to provide information as to Plaintiff's ability to work. The most salient conclusions contained in the Physical Impairment Questionnaire state that Plaintiff "cannot use either of her upper extremities including hands without pain, loss of grasp strength and limited range of motion"; that Dr. Rauh "doubt[s] [Plaintiff] will ever work 8 hour days"; and that Plaintiff "is not going to be able to have sustained work requiring use of upper extremities." (A.R. 350-352.)

Because Dr. Rauh's opinions are contradicted by the opinions of the non-examining physicians, the ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" to discount Dr. Rauh's opinions. *Lester*, 81 F.3d at 830. The ALJ provided several specific reasons for discounting Dr. Rauh's opinions. Some of these reasons were not legitimate. For example, the ALJ discounted Dr. Rauh's opinions because Dr. Rauh "has no particular experience in disability evaluation." But the ALJ does not provide any basis for

that conclusion. Moreover, it appears directly contrary to the requirement that the opinions of treating physicians – regardless of their experience with disability evaluation – are generally to be given deference. Also, the ALJ found that Dr. Rauh's "opinions that [Plaintiff] would be unable to work a full day and would be absent from work are largely based on speculation." But Dr. Rauh had treated Plaintiff for a number of years. He had ample access to objective tests regarding Plaintiff's condition, and was very familiar with her physical abilities and limitations.

However, other reasons provided by the ALJ for discounting Dr. Rauh's opinions were both specific and legitimate. The ALJ noted the discrepancies between Dr. Rauh's September 2014 opinion and February 2015 opinion, and cited the absence of any medical records to support the deterioration in Plaintiff's condition from the first opinion to the second. (A.R. 23.) The ALJ also cited specific and legitimate reasons to discredit Dr. Rauh's assessment regarding the use of Plaintiff's hands as being inconsistent with objective medical tests in the record. (A.R. 23.) Noteworthy here is that Dr. Rauh does not cite any basis for Plaintiff's inability to work other than her hands and upper extremities. (A.R. 351-352.) The ALJ accounted for Plaintiff's inability to raise her arms above her

shoulders, which limitation is supported by objective evidence,[3] but discounted Dr. Rauh's opinion to the extent that it finds Plaintiff to be unable to use her hands, which limitation is not supported by objective evidence. (A.R. 20-23.)

In addition, while the ALJ did not specifically cite the factors to be considered under 20 C.F.R. § 404.1527 in weighing treating source opinions, the ALJ did at least touch on each factor at various places in the decision.

Accordingly, the Court finds that the ALJ properly credited Dr. Rauh's opinions. Although some of the specific reasons the ALJ provided were not legitimate, that error is harmless because she provided other reasons that were both specific and legitimate. *Carmickle*, 533 F.3d at 1162.

### C.    Consideration of Plaintiff's Impairments

Plaintiff next argues the ALJ failed to consider diabetes mellitus, obesity, metabolic syndrome, and allergies as severe impairments. The Commissioner asserts the ALJ properly determined Plaintiff's impairments.

Under step two of the sequential evaluation process, the ALJ must determine whether the claimant suffers from a severe impairment or combination of

---

[3]  The Court notes that the RFC states that the Plaintiff "can never reach over shoulder height," yet also states she "can occasionally climb ladders, ropes, and scaffolds." (A.R. 20.) These findings appear inconsistent and must be addressed on remand.

impairments. 20 C.F.R 404.1520(c); 416.920. At the step two inquiry, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). The Social Security Act defines a "severe" impairment as one "which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290). The step two "inquiry is a de minimis screening device [used] to dispose of groundless claims," *Smolen*, 80 F.3d at 1290.

Here, the ALJ conducted a fairly thorough analysis at step two regarding the severity of Plaintiff's medically determinable impairments, specifically discussing each of diabetes mellitus, obesity, metabolic syndrome, and allergies, and citing to specific medical records with respect to each impairment. (A.R. 16-18.) The ALJ did not err in determining that these impairments are non-severe. *Carmickle*, 533 F.3d at 1164-1165 (affirming a find of non-severity where "the medical record does not establish any work-related limitations as a result of" the impairment).

A finding of non-severity at step two does not, however, relieve the ALJ from further considering an impairment. At step four of the sequential evaluation process, the AJL must determine the claimant's RFC. 20 C.F.R. § 404.1545(a)(5)(i). The RFC represents the most the claimant can do in a work setting despite the claimant's physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In assessing the RFC, the ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." SSR 96-8P, 1996 WL 374184, *5 (S.S.A. July 2, 1996). *See also* 20 C.F.R. § 404.1545(e).

Accordingly, even if Plaintiff's germane impairments are non-severe, the ALJ still had a responsibility to consider them within the context of the RFC, to ensure that they are not "critical to the outcome of [the] claim" "when considered with limitations or restrictions due to other impairments." Other than a brief notation of a record from Dr. Erickson regarding Plaintiff's allergies (A.R. 21), and non-specific notations regarding various medical tests that may or may not be related to the germane non-severe impairments, the ALJ failed to discuss

Plaintiff's diabetes mellitus, obesity, metabolic syndrome, or allergies within the context of her RFC. When a claimant's impairments are supported by substantial evidence in the record, the ALJ must either consider them in the RFC or cite reasons for excluding them. *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). The ALJ may not simply ignore them. *Id.* (stating the ALJ "is not free to disregard properly supported limitations.").

Therefore, although the ALJ found Plaintiff's diabetes mellitus, obesity, metabolic syndrome, and allergies were not severe, the ALJ was still required to consider whether any limiting effects of these impairments, in combination with her other severe impairments, affected her ability to work.

Accordingly, the Court finds the ALJ erred by failing to consider Plaintiff's non-severe impairments in the RFC or explaining why she excluded them. The Court further finds that the error was not harmless as they may be critical to the outcome of her claim when considered together with her other limitations or restrictions. *Carmickle*, 533 F.3d at 1164. (*See also* A.R. at 17 ("Social Security Administration Policy recognizes that a person with diabetes mellitus and obesity may have more severe complications than effects of each of the impairments considered separately.").)

**/ / /**

**D. Failure to Incorporate Impairments into Hypothetical Questions Posed to the Vocational Expert.**

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747, 756 (9th Cir. 189) (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422. *See also Shumaker v. Astrue*, 657 F.Supp.2d 1178, 1180 (D. Mont. 2009) (holding where the ALJ's hypothetical questions did not accurately reflect the claimant's restrictions established by the medical record, "the ALJ's determination that [the claimant] could perform other work existing in the national economy does not rest on substantial evidence").

As discussed above, the Court has determined the ALJ failed to adequately support her reasons for discrediting Plaintiff's testimony, and failed to adequately consider Plaintiff's limitations caused by her non-severe impairments. These errors may have infected the hypotheticals that the ALJ relied on, and in turn, the ALJ's determination that Plaintiff could perform her past relevant work.

Therefore, the Court finds the ALJ's determination at step four is not supported by substantial evidence.

## V.    REMAND OR REVERSAL

Plaintiff asks the Court to remand this case further proceedings.  "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court."  *Reddick v. Chater*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate.  On remand, the ALJ shall incorporate all of the limitations related to Plaintiff's non-severe impairments in the RFC, or cite reasons for excluding them.  In addition, the ALJ shall reconsider Plaintiff's credibility, citing to specific portions of Plaintiff's testimony, and paying special attention to aspects of Plaintiff's testimony that are

germane to limitations the VE considers disqualifying to one or more job. Finally, the ALJ shall reassess whether Plaintiff can perform her past work or other work in the national economy based upon a hypothetical to the vocational expert that incorporates of all the limitations supported by the record.

## VI. CONCLUSION

Based on the foregoing findings, the Court recommends that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 30th day of March, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge